T.C. Summary Opinion 2008-55


UNITED STATES TAX COURT


MICHAEL R. AND MELANIE J. BIRDSILL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5884-07S.               Filed May 20, 2008.


Michael R. and Melanie J. Birdsill, pro sese.

<u>Fred E. Green, Jr.</u>, for respondent.


WHERRY, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.[1]  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code of 1986, as in effect for the year in
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

this opinion shall not be treated as precedent for any other case.

This case is before the Court on a petition for redetermination of a deficiency with respect to petitioners' 2003 Federal income tax. After concessions by both parties,[2] the issue remaining is whether respondent may require $23,756 of depreciation recapture in 2003 on a 1998 GMC Suburban for which Michael R. Birdsill (petitioner) and Melanie J. Birdsill (Mrs. Birdsill) claimed a section 179 expense deduction on their 2002 joint Federal income tax return.[3]

---

[2]Respondent concedes that Melanie J. Birdsill is entitled to innocent spouse relief pursuant to sec. 6015(b). Respondent also concedes that petitioners are entitled to deduct the following expenses reported on their 2003 Schedule C, Profit or Loss From Business, totaling $4,553: (1) $71 for advertising; (2) $262 for office expense; (3) $396 for supplies; (4) $2,920 for car and truck expenses; (5) $392 for repairs and maintenance; and (6) $512 for utilities.

Petitioners concede that they are not entitled to deduct the following Schedule C expenses totaling $17,005 for taxable year 2003: (1) $16,078 for depreciation; (2) $720 for insurance; and (3) $207 for meals and entertainment.

[3]On brief, petitioner requested that "the Interest on any taxes due be Abated for the period of April 2005 through June 2006 (14 months)". Pursuant to sec. 6404(e)(1), the Commissioner may abate part or all of an assessment of interest on any deficiency or payment of income tax. Abatement may be granted to the extent that any tax deficiency or delay in payment is attributable to unreasonable erroneous or dilatory performance of a ministerial or managerial act by an officer or employee of the IRS acting in his or her official capacity.

This Court lacks jurisdiction over petitioner's abatement request. Generally, a taxpayer must first file with the
(continued...)

## Background

Some of the facts have been stipulated. The stipulations, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Chico, California.

Petitioner has over 30 years' experience in the broadcast industry. During 2003, petitioner was a full-time chief engineer and operations manager for California State University at Chico, California. In January 2002 petitioner started a broadcast engineering consulting business. In connection with that business he created his own database on digital transmission radio towers in order to capitalize on the new Federal Communications Commission rules approving a digital broadcast standard for radio stations. He believed that many radio stations would require new antenna systems.

To create the database petitioner surveyed approximately 35 digital transmission radio tower sites in northern California in 2003. Approximately half of the radio tower sites that petitioner surveyed required one visit by petitioner, while the other half required two visits.

---

[3](...continued)
Commissioner Form 843, Claim for Refund and Request for Abatement. See sec. 301.6404-1(c), Proced. & Admin. Regs. If the taxpayer's request for abatement of interest is denied, then the taxpayer may petition this Court to review the Commissioner's adverse determination. See sec. 6404(h).

Petitioner owned three vehicles during 2003: (1) A 1993 Ford F-250 truck that was purchased in 2000; (2) a 1998 GMC Suburban sport utility vehicle with all-wheel drive that was purchased in 1998; and (3) a 1997 Pontiac that was purchased in 1997.[4]

Petitioner placed the GMC Suburban into use for his business in 2002 and deducted a depreciation expense of $26,396 on his and Mrs. Birdsill's 2002 joint Form 1040, U.S. Individual Income Tax Return. Petitioner placed the Ford F-250 into use for his business on January 3, 2003, and deducted a depreciation expense of $11,968 on his and Mrs. Birdsill's 2003 joint Form 1040.[5]

On petitioner and Mrs. Birdsill's 2003 joint Form 1040 Schedule C, Profit or Loss From Business, petitioner reported $171 in income and claimed $21,558 in deductions for his broadcast engineering consultancy business. With respect to his motor vehicles, petitioner deducted a $2,920 car and truck expense and a $720 insurance expense for the Ford F-250. Petitioner did not deduct any expenses for the GMC Suburban.

Petitioner attached Form 4562, Depreciation and Amortization, to the joint Form 1040. In Section A, Depreciation and Other Information, of Form 4562, petitioner listed as

---

[4]Petitioner used the Pontiac to commute to his full-time job and for other personal uses.

[5]Petitioner also deducted a depreciation expense of $4,110 for a computer placed into service on Jan. 3, 2003.

"Property used more than 50% in a qualified business use" the Ford F-250.[6]  In Section B, Information on Use of Vehicles, petitioner listed 8,110 miles for both business and total mileage of the Ford F-250.

On December 15, 2006, respondent mailed to petitioners the aforementioned notice of deficiency that determined a deficiency of $11,314 for taxable year 2003.  Petitioner and Mrs. Birdsill timely petitioned this Court.  Their petition stated:

> Item 7(b) of the Notice-Depreciation Recapture-is totally without Merit.  In fact, that issue was "added" to the Audit Report after an Appeal Request was Filed with the Appeals Office in Sacramento, California. This smacks of a retaliatory action by the Auditor.
>
> All other Items are in Dispute.  An offer to Settle was not given any consideration by the Appeals Office; this Case has landed in this Forum because the Appeals Office did nothing for 14 Months (April 2005- June 2006), and then the Appeals Officer tried to goad the Taxpayer into Signing an Extension of the Statute of Limitations.  Taxpayer indicated that the Extension would only be signed if the Document was limited in its duration and in the scope of the issues involved. Appeals Officer refused and issued the Notice of Deficiency.

Petitioner and Mrs. Birdsill's divorce became effective on June 28, 2007, pursuant to a decree issued on August 30, 2007. On October 4, 2007, Mrs. Birdsill filed an amended petition requesting innocent spouse relief.  An attachment to the amended petition indicated that petitioner did not object to Mrs. Birdsill's request.  At trial on November 7, 2007, in Reno,

---

[6]Petitioner also listed a computer.  See supra note 5.

Nevada, respondent conceded that Mrs. Birdsill was entitled to innocent spouse relief pursuant to section 6015(b); there was no objection by petitioner.

## Discussion

### I. Burden of Proof

As a general rule, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, pursuant to section 7491(a), the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue." The burden will shift only if the taxpayer has, inter alia, complied with substantiation requirements pursuant to the Internal Revenue Code and "cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews". Sec. 7491(a)(2). In the instant case, petitioner did not argue that the burden should shift, and he failed to comply with the substantiation requirements. Accordingly, the burden of proof remains on petitioner.

### II. Retaliatory Action

Petitioner alleges that the depreciation recapture is a retaliatory action by the revenue agent who conducted his and

Mrs. Birdsill's audit because it became an issue only after petitioner and Mrs. Birdsill filed an appeal request with respondent's Appeals Office.[7] As a general rule, this Court will not look behind a notice of deficiency. It does not usually examine the evidence used or the propriety of the Commissioner's motives, policy, or procedures in making audit determinations. See Riland v. Commissioner, 79 T.C. 185, 201 (1982); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974); Human Engg. Inst. v. Commissioner, 61 T.C. 61, 66 (1973); Suarez v. Commissioner, 58 T.C. 792, 814 (1972), overruled in part Guzzetta v. Commissioner, 78 T.C. 173 (1982).

However, this Court has recognized an exception to the rule when there is substantial evidence of unconstitutional conduct on the Commissioner's part and the integrity of the judicial process would be impugned if the Court permitted the Commissioner to benefit from his conduct. Suarez v. Commissioner, supra; see Greenberg's Express, Inc. v. Commissioner, supra at 328. But even in these limited situations, this Court has refused to hold the notice of deficiency null and void. Human Engg. Inst. v.

---

[7]Although petitioners seem to think that this issue was raised by the revenue agent, the record reflects that the issue was more likely raised by Appeals. To encourage settlement, Appeals officers are discouraged from raising new issues. However, per Policy Statement P-8-49, which was in effect when this case was before Appeals (and is now part of Policy Statement P-8-2 (Jan. 5, 2007)), Appeals is not supposed to raise a new issue "unless the ground for such action is a substantial one and the potential effect upon the tax liability is material."

<u>Commissioner</u>, <u>supra</u>; <u>Suarez v. Commissioner</u>, <u>supra</u>; see <u>Greenberg's Express, Inc. v. Commissioner</u>, <u>supra</u>.

Although petitioner alleged retaliatory action in his petition, he offered no independent evidence to support his allegation.  Furthermore the record does not indicate that any of respondent's agents engaged in conduct that violated petitioner's rights.  As petitioner has not shown that respondent's deficiency determination was arbitrary or erroneous, or that the determination was not supported by the proper foundation, it is inappropriate for this Court to look behind the notice of deficiency to examine the basis for, or reasons behind, respondent's determination.  See <u>Riland v. Commissioner</u>, <u>supra</u>. The notice of deficiency, therefore, is valid, and respondent's deficiency determination is presumed correct.

III. <u>Deductions</u>

A. <u>General Rules</u>

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any claimed deductions.  <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).  Taxpayers must maintain records relating to their income and expenses and must prove their entitlement to all claimed deductions, credits, and expenses in controversy.  See sec. 6001;

Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, <u>supra</u>; <u>Welch v. Helvering</u>, <u>supra</u>.

B. <u>Substantiation Requirements of Section 274(d)</u>

Section 274(d) applies to: (1) Any traveling expense, including meals and lodging away from home; (2) entertainment, amusement, and recreational expenses; (3) gift expenses; or (4) the use of "listed property", as defined in section 280F(d)(4), including automobiles. To deduct such expenses, the taxpayer must substantiate by adequate records or sufficient evidence to corroborate the taxpayer's own testimony: (1) The amount of the expenditure or use, which includes mileage in the case of automobiles; (2) the time and place of the travel, entertainment, or use; (3) its business purpose; and in the case of an entertainment or gift expense, (4) the business relationship to the taxpayer of each expenditure or use. Sec. 274(d).

To satisfy the adequate records requirement of section 274(d), a taxpayer must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use. Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction "of the elements * * * of the expenditure or use must have a high degree of probative value to elevate such statement" to the level of credibility of a

contemporaneous record.  Sec. 1.274-5T(c)(1), Temporary Income
Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Under Cohan, if a factual basis exists to do so, the Court
may approximate the allowable expense, bearing heavily against
the taxpayer who failed to maintain adequate records.  Cohan v.
Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  However,
section 274(d) overrides the Cohan rule with respect to section
280F(d)(4) "listed property" and thus specifically precludes the
Court from allowing automobile expenses on the basis of any
approximation or the taxpayer's uncorroborated testimony.  Sec.
1.274-5T(a)(4), Temporary Income Tax Regs., 50 Fed. Reg. 46014
(Nov. 6, 1985).

C. Depreciable Assets

A taxpayer may elect to deduct as a current expense the cost
of any section 179 property, with certain dollar limitations,
that is acquired by purchase in the active conduct of a trade or
business and placed in service during the taxable year.
Sec. 179(a), (b), (d)(1); see sec. 1.179-4(a), Income Tax Regs.
To deduct depreciation pursuant to section 179 for property
subject to section 280F, such as automobiles, a taxpayer must
establish that business use exceeds 50 percent.  Sec. 280F(b)(3);
sec. 1.179-1(d), Income Tax Regs.  If business use of listed
property falls to 50 percent or less, then it is subject to the
depreciation recapture rules of sections 179(d)(10) and

280F(b)(2), respectively.  The recapture rule of section 280F(b)(2) takes precedence.  Sec. 1.179-1(e)(1), Income Tax Regs.

Section 280F(b)(2) provides:

(2) Recapture.--

(A) Where business use percentage does not exceed 50 percent.--If--

(i) property is predominantly used in a qualified business use in a taxable year in which it is placed in service, and

(ii) such property is not predominantly used in a qualified business use for any subsequent taxable year,

then any excess depreciation shall be included in gross income for the taxable year referred to in clause (ii), and the depreciation deduction for the taxable year referred to in clause (ii) and any subsequent taxable years shall be determined under section 168(g) (relating to alternative depreciation system).

A taxpayer must be able to substantiate the use of any "listed property", as prescribed in section 274(d)(4), for any taxable year for which recapture under section 280F(b)(3) may occur. Sec. 1.280F-3T(d)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46038 (Nov. 6, 1985).[8]

---

[8]Sec. 1.280F-3T(d)(3), Temporary Income Tax Regs., 49 Fed. Reg. 42708 (Oct. 24, 1984), provides the following as an example: "in the case of 3-year recovery property, the taxpayer shall maintain a log, journal, etc. for six years even though the taxpayer fully depreciated the property in the first three years."

At trial petitioner testified that during 2003 he used the Ford F-250 truck for 75 percent of his business mileage and the GMC Suburban for 25 percent of his business mileage. Petitioner's estimation of the business use of the GMC Suburban appears to be based on the fact that at least 4 of the 34 or 35 radio tower sites he visited in 2003 required an all wheel drive vehicle to gain access to the site. Those four sites, which required the use of the all wheel drive GMC Suburban, were, on average, approximately 150 miles from Chico, California. According to petitioner, most of the sites that did not require an all wheel drive vehicle, for which he normally used the Ford F-250, were less than 150 miles from Chico, California. Petitioner also used the GMC Suburban for "other things * * * [he] was doing with * * * [his business, such as] taking a client to an existing radio station".

While the Court finds petitioner's testimony that he used the GMC Suburban for business purposes in 2003 to be credible, it does not establish that the GMC Suburban was used more than 50 percent of the time for business purposes. Petitioner admitted that the GMC Suburban was "used on a personal level to take my spouse to her doctor's appointments" and "[m]inimal trips, other than medical appointments for my spouse". Unfortunately,

petitioner did not keep any records of the business or personal use of his GMC Suburban in 2003.[9]

Petitioner's uncorroborated testimony and bare assertions on brief, without other admissible evidence, do not establish that he used the GMC Suburban more than 50 percent for business purposes in 2003.  The Court views this testimony--provided some 4 years after the fact from memory--as little more than educated speculation.  Consequently, petitioner has not met the strict substantiation requirements of section 274(d).  Accordingly, the Court sustains respondent's determination that $23,756 of depreciation claimed for the GMC Suburban was subject to recapture in taxable year 2003.

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

---

[9]Petitioner attached to his brief a handwritten document, dated Jan. 6, 2005, that contained his notes of a meeting on that date with Internal Revenue Service Agent Dale Duttey (Mr. Duttey).  Attachments to briefs are not evidence if the material therein was not contained in the joint stipulation of facts or introduced as evidence at trial.  See Rule 143(b).  In any event, the document is devoid of any information regarding the business use or mileage of the GMC Suburban.  Petitioner also attached Mr. Duttey's handwritten notes regarding the audit of petitioner and Mrs. Birdsill's 2003 joint Federal income tax return.  Mr. Duttey's notes include only the following notation regarding the GMC Suburban:  "per TP's OT [oral testimony] the suburban did not meet business needs - TP now using a pickup truck [Ford F-250] - Suburban is below 50% bus[iness] use".

To reflect the foregoing and concessions by both parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.